**In re Dale FRARY, Debtor.**

**Dale FRARY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Adv. No. A88–01166–001.**

United States Bankruptcy Court,
D. Alaska.

Aug. 13, 1990.

M. Gregory Oczkus, Greg Oczkus Law Offices, Anchorage, Alaska, for plaintiff.

Stephen B. Baker, Sp. Asst. U.S. Atty., I.R.S., Anchorage, Alaska, for defendant.

## ORDER

DONALD MacDONALD IV,
Bankruptcy Judge.

### I. Introduction.

Plaintiff Dale G. Frary filed a chapter 7 petition on December 8, 1988, and subsequently commenced this adversary proceeding against the Internal Revenue Service seeking a determination of the dischargeability of pre-petition taxes and penalties assessed by the IRS.

The facts in this matter are not in dispute. The IRS assessed Frary three times for 1983 tax liabilities. The first assessment, resulting from an audit after Frary filed a late return, was made on March 30, 1987, in the amount of $2,042.00, plus penalties and interest. The second was made February 29, 1988, and resulted from a Tax Court proceeding after the audit. The Tax Court, in the proceeding, allowed an itemized deduction taken by Frary on account of a partnership loss (the auditor, in the audit which had resulted in the first assessment, had also allowed this deduction). The third assessment occurred on August 15, 1988, resulting from an audit of a partnership tax return and the disallowance of the loss claimed by Frary. According to the IRS, this disallowance "flowed through" to the individual partners after audit of the partnership return, which resulted in the third assessment of tax liability for Frary for calendar year 1983. The third assessment is in the amount of $5,995.00, plus interest and penalties.

Frary also owes the IRS taxes for calendar years 1981, 1982 and 1984. Frary's individual returns for tax years 1981, 1982 and 1983 were filed late, in August 1986. The record does not reflect when Frary's 1984 returns were filed.

Both parties concur that the taxes, interest and penalties due for tax years 1981 and 1982, and on account of the first two assessments for 1983, are dischargeable. Both parties also agree that Frary's tax liability for calendar year 1984 is not dischargeable.

The dispute centers around whether the third tax assessment made by the IRS for calendar year 1983, on account of the disallowance of the partnership deduction, is dischargeable. The parties also dispute whether the penalties and interest on the penalties for this third assessment (and for the 1984 tax liability—on oral motion of Frary's counsel at time of argument on cross motions) are dischargeable.

Frary contends that the tax assessed on August 15, 1988 (the third assessment) is dischargeable, and advances three theories. First, Frary contends that this assessment "relates back" to the prior assessments for tax year 1983, thus placing it outside of the 240 day requirement of 11 U.S.C. § 507. Frary's second theory is that the Tax Court decision which resulted in the second assessment has a res judicata effect on the third assessment, as the Tax Court allowed the partnership deduction when it made its decision. Frary's third theory is that the third assessment is barred by the doctrine of accord and satisfaction, because the stipulated settlement which he entered into in the Tax Court matter was based upon the Tax Court's decision (and the allowance of the partnership deduction).

The IRS contends that multiple assessments are commonplace, and that there is no provision in the Internal Revenue Code permitting "relation back" of one assessment to another. Further, the IRS contends that partnership deductions must first be reviewed at the partnership level, with the consequences of the examination of the partnership return then "flowing through" to the individual partners. The IRS also contends that the Tax Court's allowance of the partnership deduction on Frary's individual return for 1983 will not preclude the later assessment, and relies upon 26 U.S.C. § 6230(a)(2)(C).

The dispute pertaining to the penalties on the third assessment for 1983 and tax year 1984 centers around the interpretation of 11 U.S.C. § 523(a)(7), which contains two subsections specifying when tax penalties are not dischargeable. Debtor and the IRS did not brief the issue of the 1984 tax penalties, but debtor's counsel made the argument for dischargeability of these penalties in addition to the 1983 penalties at

oral argument on the cross motions for summary judgment.

As there are no factual disputes on any issues, Bankruptcy Rule 7056 and Rule 56(b) of the Federal Rules of Civil Procedure apply. The only issues are issues of law. This court will examine each of the issues raised by the debtor in the following order: (1) Relation Back of Multiple Assessments; (2) Res Judicata and Accord and Satisfaction; and (3) Dischargeability of Penalties.

II. Relation Back of Multiple Assessments.

■ The debtor contends that the third assessment for 1983 "relates back" to the prior assessments for that year, thus taking the third assessment out of the 240 day time period immediately preceding the filing of the debtor's petition. If the third assessment occurred more than 240 days from the date the petition was filed, then the tax is dischargeable, pursuant to § 523(a)(1)(A) of the Bankruptcy Code, which provides:

Sec. 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty— (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

Section 507(a)(7)(A)(ii) of the Bankruptcy Code gives priority status to income taxes:

[A]ssessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition.

A tax which has priority under § 507(a)(7) is also nondischargeable, pursuant to § 523(a)(1).

■ The debtor provides no authority for his contention that one assessment can "relate back" to another. He claims that § 507(a)(7) of the Bankruptcy Code compels this conclusion. However, this section of the Bankruptcy Code does not support the debtor's contention, as it simply provides for priority of taxes which are assessed within 240 days from the date of the filing of the petition, and does not provide for any form of interrelationship between assessments. In fact, § 507(a)(7) compels the conclusion that the third assessment for 1983 is not dischargeable, as this assessment was made on August 15, 1988, which was within 240 days of the date Frary's petition was filed, December 8, 1988.

Nor does the Internal Revenue Code give any support to the debtor's claim that one assessment can relate back (or forward) to another. A review of the Internal Revenue Code does, however, support the IRS's general statement that multiple assessments are commonplace. For example, 26 U.S.C. § 6201 authorizes the assessment of "all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)" by the Secretary. Section 6204 permits a supplemental assessment to be made "whenever it is ascertained that any assessment is imperfect or incomplete in any material respect." 26 U.S.C. § 6214 gives the U.S. Tax Court jurisdiction to redetermine the correct amount of a deficiency and whether any additional amount of tax should be assessed. Section 6215 states that, as a general rule, if a taxpayer files a petition with the Tax Court, then the entire amount of tax redetermined shall be assessed. Section 6501 contains a statute of limitations on assessment and collection, stating that, as a general rule, "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." Nothing contained in this statute states that multiple assessments relate back in any manner whatsoever. Because multiple assessments are commonplace, the debtor has no basis for his relation back argument.

■ Further, it should be remembered that the third assessment, in Frary's case, occurred after examination of the partnership return and the subsequent disallow-

ance of a partnership loss which Frary had claimed on his individual return for 1983. The Internal Revenue Code provides that the determination of "partnership items" which may be reported on an individual's return are to be made by examining the partnership return, rather than the individual's return. 26 U.S.C. § 6221 provides that "the tax treatment of any partnership item shall be determined at the partnership level." 26 U.S.C. § 6225 establishes prerequisites for the assessment of partnership items. Section 6229 establishes a period of limitations for making assessments of partnership items. This period of limitations is independent of the limitation period set in 26 U.S.C. § 6501. Finally, 26 U.S.C. § 6231(e) provides, in part:

> (e) Effect of judicial decisions in certain proceedings.—
>
> (1) Determinations at partner level.— No judicial determination with respect to the income tax liability of any partner not conducted under this subchapter shall be a bar to any adjustment in such partner's income tax liability resulting from—
>
> (A) a proceeding with respect to partnership items under this subchapter, ...

■ The Tax Court has noted that the amendment of 26 U.S.C. § 6230(a) in 1986 (this is the section upon which the IRS relies in Frary's case) permits the IRS to assess an individual partner after the completion of the examination of the partnership return, notwithstanding the fact that previous proceedings may have already been concluded regarding the individual partner's return on which the partnership item was taken. *N.C.F. Energy Partners, et. al. v. Commr. of Internal Revenue*, 89 T.C. 741 at 744, n. 3 (1987).

Neither the Internal Revenue Code nor § 507(a)(7) of the Bankruptcy Code contain any provision for the "relation back" of one assessment to another, as urged by Frary. The Internal Revenue Code specifically provides for assessment of individual partners, and adjustment of their individual income tax liability, following the examination of a partnership return. Accordingly, Frary's

claim that the third assessment (which resulted from examination of the partnership return), "relates back" to the previous assessments (which were on account of his individual return for 1983), is without merit.

III. Res Judicata and Accord and Satisfaction.

■ The Ninth Circuit has stated:

> Res judicata principles apply in tax litigation. [citation omitted] Parties are bound by res judicata as to both matters decided and matters which could have been raised once a court of competent jurisdiction has entered a final judgment on the merits of an action.

*Russell v. Commr. of Internal Revenue*, 678 F.2d 782 at 785 (9th Cir.1982).

Notwithstanding the above, the language in 26 U.S.C. § 6231(e), cited above, would appear to indicate that the Tax Court proceeding regarding Frary's individual liability on his personal return would not bar the subsequent disallowance of the partnership loss by the IRS. Recent Tax Court decisions interpreting the provisions of the Internal Revenue Code pertaining to examination of partnership returns (26 U.S.C. §§ 6221–6233) indicate that the Tax Court does not have jurisdiction, in a deficiency proceeding pertaining to a partner's individual return, to rule upon partnership items. For example, in *Maxwell v. Commr. of Internal Revenue Service*, 87 T.C. 783 (1986), the Tax Court held that it did not have jurisdiction in a partner's personal tax case "over any portion of a deficiency attributable to a partnership item." In *Maxwell*, the Tax Court discussed the applicability of §§ 6221–6233 of the Internal Revenue Code to a proceeding involving an individual partner, and stated:

> [T]he portion of any deficiency attributable to a "partnership item" cannot be considered in the partner's personal case involving other matters that may affect his income tax liability. The "partnership items" must be separated from the partner's personal case and considered solely in the partnership proceeding. See section 6226(a); section 6226(f).

*Id.* at 788. The Tax Court concluded that it lacked jurisdiction, in the individual partner's proceeding, to determine any liability for partnership items and, conversely, that the IRS was barred from attempting to assess any deficiencies on account of partnership items prior to the termination of the partnership proceeding (which was also pending).

The Tax Court, in the *Maxwell* case, points out that items may cease to be "partnership items" and thus, subject to its jurisdiction, pursuant to 26 U.S.C. § 6231(b). Although the subsection is not discussed in the case, § 6231(b)(1)(C) indicates that a "partnership item" may become a "nonpartnership item" if "the Secretary enters into a settlement agreement with the partner with respect to such items." This subsection could conceivably be applicable in Frary's situation, as a stipulated settlement was reached in the Tax Court decision pertaining to his 1983 return. However, in reviewing the settlement, it is not clear whether the Tax Court dealt with the partnership loss on the merits, or simply ignored it in redetermining Frary's individual tax liability for 1983.

In *Munro v. Commr. of Internal Revenue*, 92 T.C. 71 (1989), the taxpayers filed a petition before the Tax Court for a redetermination of tax liability for 1983. The taxpayers had reported net losses of $891,322 on their 1983 individual return, attributable to various partnerships. The IRS had issued a notice of deficiency to taxpayers for their 1983 return, disallowing certain nonpartnership items claimed on their return and, also, prospectively disallowing the net partnership losses claimed by taxpayers. The taxpayers filed a motion to dismiss for lack of jurisdiction. The Tax Court, consistent with its previous holding in *Maxwell*, stated:

> All partnership items must be separated from nonpartnership items and are exclusively the subject of a partnership proceeding. Deficiency proceedings must exclusively consider nonpartnership items. Consequently, partnership items (whether income, loss, deductions or credits) included on petitioners' return are completely ignored to determine if a deficiency exists that is attributable to nonpartnership items. Any proposed adjustments to those partnership items likewise must be ignored.

*Munro, supra* at 74. The Tax Court granted the taxpayer's motion to dismiss only as to the partnership items which the IRS had attempted to prospectively disallow.

Finally, in *N.C.F. Energy Partners, et. al. v. Commr. of Internal Revenue*, 89 T.C. 741 (1987), the Tax Court discussed the res judicata effect of a partnership proceeding on subsequent litigation at the partner level. The court held that "the doctrine of res judicata will apply to preclude the parties from relitigating any issue already resolved in the partnership proceeding, for example, the value or basis of partnership assets." However, the court also discussed, at 89 T.C. 744, footnote 3, the effect that § 6230(a) had upon § 6212(c) of the Internal Revenue Code, as follows:

> n3 Section 6212(c) provides that once respondent has issued a notice of deficiency for a taxable year and the taxpayer has filed a timely petition with this Court, respondent cannot determine any additional deficiencies for that year. In the Tax Reform Act of 1986, Congress amended Section 6230(a) to permit the issuance of notices of deficiency to individual partners after an FPAA has been issued and the partnership level proceedings have been completed. [citations omitted] *Prior to this amendment, it was doubtful that respondent could issue a notice of deficiency to reflect the tax consequences of the partnership proceeding on affected items.* (Emphasis added.)

These cases support the IRS's position that the Tax Court, in Frary's case, had to allow the partnership loss on his individual return. The Tax Court simply did not have jurisdiction to do otherwise and, consequently, the doctrine of res judicata would not bar the third assessment based upon the examination of the partnership return.

■ Frary also claims that the third assessment is barred by the doctrine of ac-

cord and satisfaction. However, the record does not support Frary's claim.

An accord is a contract between a creditor and debtor for a settlement of the creditor's claim by some performance other than that which is due. *Stephenson v. Ketchikan Spruce Mills, Inc.*, 412 P.2d 496, 498 (Alaska 1966). Satisfaction is the performance of such a contract. *See* Restatement of Contracts § 417 comment a, at 785–86 (1932).

Like any contract, an accord requires an offer, an acceptance, and consideration to be enforceable.

*Air Van Lines, Inc. v. Buster*, 673 P.2d 774 at 777 (Alaska 1983).

Obviously, there was an accord as to a portion of the Plaintiff's tax liability for understatement of tax, pursuant to the stipulation of the Plaintiff and the Internal Revenue Service in Tax Court. That accord, however, did not encompass amounts due for disallowance of the partnership deductions. As noted previously, the Tax Court did not have jurisdiction to make a determination regarding the partnership loss. There is no showing that the partnership loss was treated in such a manner that it became a "non-partnership item" and thus subject to the Tax Court's jurisdiction. Thus, the third assessment was not part of the accord and cannot be barred by it.

## IV. Dischargeability of Penalties.

■ Under § 523(a)(7), there are two separate standards for determining the nondischargeability of a tax penalty.[1] Under subsection (A), a tax penalty which relates to a tax not dischargeable under § 523(a)(1) is also nondischargeable. Assuming in this case that the third assessment falls within the gambit of § 523(a)(1) (and is therefore nondischargeable), it would appear that the penalties assessed on this tax are also nondischargeable pursuant to subsection (A). However, subsection (B) provides that tax penalties imposed "with respect to a transaction or event that occurred" more than three years before the date the petition is filed are dischargeable. As the third assessment in Frary's case is upon a tax return which should have been filed more than three years prior to the date his petition was filed, the penalties upon this third assessment could be dischargeable under subsection (B). The two subsections are connected by the word "or".

Cases interpreting this provision have been inconsistent. The Seventh Circuit took a restrictive view of the statute in *Cassidy v. Commr. of Internal Revenue*, 814 F.2d 477 (7th Cir.1987). *Cassidy* found that even when a tax penalty is imposed on a transaction or event that occurred three years before the date of the filing of the petition, the penalty is nondischargeable if the underlying tax is nondischargeable under § 523(a)(7)(A). *Cassidy* effectively eliminated § 523(a)(7)(B) solely on the basis that subparagraph (B) conflicted with the legislative history of the statute.

Two subsequent circuit court decisions dealing with the issue have been critical of the *Cassidy* decision and issued decisions in accordance with the plain meaning of the statute. In *In re Burns*, 887 F.2d 1541, 1551–52 (11th Cir.1989) the Eleventh Circuit stated, after exhaustively reviewing the legislative history:

We resolve the question of how to read the legislative history in a simple fashion: by reading the statute and taking it at face value. Given the several "mute intermediate legislative maneuvers" through which section 523(a)(7) passed before reaching its present form, we conclude that congressional intent cannot be divined from extrinsic sources. The early committee reports do not refer to a

---

**1.** 11 U.S.C. § 523(a)(7) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt...

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition ...

comparably worded proposal. The Joint Statement contains inaccuracies and inconsistencies. It asserts that the current language is an adoption of the Senate amendment's language, *see* 124 Cong. Rec. 34016, which it is not. Moreover, the two instances in which section 523(a)(7) is mentioned lack consistency, neglecting any reference to subsection (B) in the first instance, *see id.* at 33998, while expanding on the matter later, *see id.* at 34016. Moreover, knowing that the House originally passed a version very different from the Senate, we should not readily assume that the more general language enacted by the two houses possesses the same meaning as the more specific language proposed by the Senate Finance Committee. *Cf. Blessitt [v. Retirement Plan],* 848 F.2d [1164] at 1178–79 [ (11th Cir.1988) ] (scope of bills to be reconciled in conference suggests scope of changes that were reasonably contemplated by Congress). "Ambiguous and unclear legislative history may not be used to alter the ordinary meaning of statutory language." *Jones v. MARTA,* 681 F.2d 1376, 1380 n. 10 (11th Cir.1982). Thus, as the Supreme Court has counseled in *Dimension Financial* and other cases, in light of the compromises and changes, *we can effect the will of Congress only by giving effect to the words of the statute.* (Emphasis added; footnotes omitted.)

Burns initially filed a chapter 7 petition, at which time she owed taxes, penalties and interest for tax years 1977 through 1981, 1983 and 1985. The IRS did not file a claim in her chapter 7 case. Burns was discharged in June, 1984, and subsequently, in 1987, filed a chapter 13 case. The IRS filed a claim in the chapter 13 case, seeking to recover taxes, fraud penalties, and interest for tax years 1977 through 1979, and other years. Burns claimed that "since her tax returns for 1977 through 1979 are transactions or events occurring more than three years prior to her 1984 chapter 7 filing, ... the penalties associated therewith are discharged." *Id.* at 1542. The Eleventh Circuit held that fraud penalties

assessed on taxes for which the debtor had filed returns more than three years before the date on which she filed her chapter 7 petition were dischargeable, even though the taxes themselves were not, under § 523(a)(7)(B). The court paraphrased § 523(a)(7) as follows:

> A tax penalty is discharged if the tax to which it relates is discharged (in the precise terms of the statute, not nondischargeable) or if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition. Since the statute uses the disjunctive, a tax penalty that does not qualify under one of the two aforementioned circumstances may still qualify under the other.

*In re Burns, supra* at 1544.

In reaching its decision, the court accepted the debtor's contention that the "transaction or event" giving rise to the tax penalty was the filing of her returns for the years 1977 through 1979. There is no discussion in the opinion distinguishing the date of assessment by the IRS from the date the debtor filed the tax returns for the purpose of determining the three year period indicated in subsection (B). In a footnote, the court notes that the phrase "transaction or event" is not specifically defined, although the phrase appears to have been related to another proposed section which did not survive legislative compromise. The court stated that, since the proposed definitional section was not enacted into law, the legislative history surrounding the proposed definition is irrelevant to the interpretation of subsection (B). *In re Burns, supra* at 1551, note 10.

The Tenth Circuit has most recently issued an opinion dealing with the interpretation and application of § 523 to tax penalties. In *In re Roberts,* 906 F.2d 1440 (10th Cir.1990), the debtors failed to file returns for the tax years 1982 and 1983, and the IRS assessed taxes, penalties and interest. The debtors, in 1988, filed chapter 7 and commenced an adversary proceeding against the IRS seeking a determination of the dischargeability of the penalty portion of the assessed taxes. In the *Roberts* case,

the court adopted the reasoning of the Eleventh Circuit and held that a tax penalty "imposed with respect to a transaction or event that occurred before three years before" the bankruptcy petition is dischargeable in bankruptcy, even though the underlying tax is not. *Id.*, at page 1442. As in the *Burns* case, the court used the date that the taxes were due, rather than the date penalties were assessed, in determining the three year period. The court stated:

> [W]e find no provision in the Bankruptcy Code which indicates that the words of section 523(a)(7)(B) do not mean what they say. Because the tax penalties were assessed for the tax years 1982 and 1983, the penalties were "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition" and are dischargeable.

*Id.*

There are no Ninth Circuit decisions interpreting § 523(a)(7). However, the Ninth Circuit has stated that exceptions to discharge should be strictly construed, in order to effectuate the policy of "fresh start". *In re Rahm*, 641 F.2d 755, at 756–757 (9th Cir.1981). Adopting the reasoning of the Tenth and Eleventh Circuits, the penalties assessed by the IRS on Frary's third assessment for 1983 and on his 1984 tax return are dischargeable, under 11 U.S.C. § 523(a)(7)(B), as the penalties are on taxes that were due more than three years before the date that Frary filed his petition.

■ "Transaction or event" is not defined by the Bankruptcy Code. In the absence of such authority, the "transaction or event" which gave rise to the August 1988 penalty assessment is the debtor's failure to file a tax return and pay taxes on April 15, 1984 for tax year 1983, not the assessment in August 1988. Similarly, the transaction or event which gave rise to penalties in 1984 is the debtor's failure to file a tax return on April 15, 1985 and pay taxes for that year. The bankruptcy petition was filed on December 8, 1988. Any penalty with respect to a transaction or event prior

to December 8, 1985 is discharged. Thus the penalty arising out of the August 15, 1988 assessment is discharged as well as any penalties arising out of tax year 1984 because they are more than three years old.

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's taxes, interest and penalties for tax years 1981, 1982, and the first two assessments for year 1983 due the Defendant have been discharged;
2. All penalties relating to Plaintiff's 1984 tax liability together with interest on such penalties have been discharged;
3. The third assessment of the Plaintiff in 1983 is nondischargeable; Plaintiff's 1984 tax liability is also nondischargeable and both of these amounts continue to accrue interest;
4. Each party shall pay their own costs and attorney's fees;
5. Through stipulation of the parties, the chapter 7 case of the Plaintiff, case number A88–01166 shall be reopened and any valuation of liens against property of the debtor will be done in conjunction with that case and not in this adversary action.