Thomas V. CASSIDY,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 86–2302.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1986.

Decided March 18, 1987.

Martha Brisette, Asst. Atty. Gen., Tax. Div. Dept. of Justice, Washington, D.C., for respondent-appellee.

John E. Cassidy, Cassidy & Mueller, Peoria, Ill., for petitioner-appellant.

Before CUDAHY, and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

---

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, sitting by designation.

RIPPLE, Circuit Judge.

In this case, appellant-taxpayer Thomas V. Cassidy, appeals from the order and decision of the United States Tax Court granting summary judgment for the Commissioner with respect to income tax deficiencies and fraud penalties. For the reasons set forth in this opinion, we affirm the judgment of the tax court.

## I

### Facts

On June 24, 1980, the Commissioner of Internal Revenue sent the appellant a notice of deficiency in federal income taxes for the fiscal years ending August 31, 1974 and August 31, 1975. These deficiencies were in the amounts of $12,865 and $22,028, respectively. They resulted from an adjustment by the Commissioner of the taxpayer's income tax returns by including within his taxable income previously unreported legal fees and by disallowing various deductions. The Commissioner also found that all or part of the underpayment of tax was due to fraud. Therefore, pursuant to section 6653(b) of the Internal Revenue Code, the Commissioner assessed against the taxpayer civil fraud penalties of $11,774 for 1974 and $11,014 for 1975. R.2 at 5–6.

On September 25, 1980, the taxpayer filed a petition with the United States Tax Court for redetermination of his income tax liability. A trial date was set for March 22, 1982. Upon call of the case for trial, his counsel moved for permission to withdraw and for a continuance. While granting these motions, the court admonished that there would be no additional continuances. In preparation for trial, the Commissioner, on April 27, 1982, sent the taxpayer an informal discovery request asking that he stipulate to all undisputed material facts in accordance with Tax Court Rule of Practice and Procedure 91(a) and submit documents in support of his position. The taxpayer failed to provide any of the requested infor-

mation. Consequently, the Commissioner initiated formal discovery proceedings against the taxpayer and, on December 7, 1982, served the taxpayer with a request for the production of documents together with interrogatories. The taxpayer failed to produce any of the requested documents or to answer any of the interrogatories. The Commissioner's subpoena duces tecum was similarly ignored.

On November 14, 1983, the court issued a notice setting the case for trial on January 30, 1984. On January 3, 1984, the taxpayer notified the tax court that he was the subject of an involuntary petition for bankruptcy under chapter 7. 11 U.S.C. §§ 701 et seq. This involuntary petition had been filed on February 14, 1983—almost a year before the taxpayer notified the tax court of its pendency. Because of the pendency of the bankruptcy action, the tax court automatically stayed its proceedings. On March 13, 1984, the taxpayer received a discharge from the bankruptcy court releasing him from all dischargeable debts. One month later, on the petition of the government, the bankruptcy court lifted its automatic stay "in order to permit the Tax Court proceeding between the parties now pending to proceed forward." R.17, Ex. A. The tax court then set the case for trial at the first regularly scheduled Chicago, Illinois trial session during the 1984 fall term. In preparation for that litigation, the Commissioner, on June 12, 1984, mailed to the taxpayer a request for admissions together with other discovery documents. On June 15, 1984, a copy of this request was filed with the court. The taxpayer did not respond; therefore, on August 22, 1984, the Commissioner moved for summary judgment based upon the matters deemed to be admitted.

On September 27, 1984, five days before the commencement of trial, the taxpayer's attorney filed an entry of appearance and a motion for a general continuance of the trial. After a hearing, the tax court denied the continuance and held that the matters set forth in the request for admissions were deemed admitted. The tax court afforded the taxpayer thirty days to provide a written response to the Commissioner's motion for summary judgment. On November 13, 1984, forty-five days later, the taxpayer filed a reply. He claimed that he had not received the request for admissions until September 4, 1984 and further argued that collection of the deficiencies was barred by the statute of limitations. The taxpayer also filed a motion to dismiss and a motion for summary judgment in which he asserted that the deficiencies at issue had been discharged in the bankruptcy proceeding. The taxpayer appended to his motions an affidavit of Susan J. Fasse, a paralegal administrator, averring that the taxpayer had not received the request for admissions until September 4, 1984.

The tax court set the matter for a hearing on February 26, 1985. At the hearing, the taxpayer testified on his own behalf and also presented the testimony of Ms. Fasse. Several exhibits also were admitted. One of the exhibits was a small envelope postmarked "Springfield, Illinois, August 31, 1984." Petitioner's Ex. 4. The taxpayer alleged that he received the request for admissions in this envelope. The Commissioner attempted to show that the request for admissions could not have been sent in this small envelope. The Commissioner presented the testimony of an employee of the Internal Revenue Service who testified that the request for admissions was mailed in a large envelope that had also contained two other documents, a second request for production of documents and interrogatories. It was standard practice, the employee testified, for these multi-paged documents to be sent to taxpayers in large envelopes. The IRS employee also testified that the only mail the taxpayer had been sent on August 31, 1984 was a one-page letter in a small envelope.

## II

### The Tax Court's Decision

The tax court found that the Commissioner had properly mailed and served the request for admissions to the taxpayer on June 12, 1984. The court explained that its decision was based on its observation of the witnesses' demeanor and the consisten-

cy of their testimony as well as on the physical evidence that had been submitted. The court noted that the request for admissions could not have fit within the small envelope as maintained by the taxpayer. The court concluded that "[t]he more plausible explanation is that petitioner and Fasse fabricated their testimony in an effort to avoid the consequences of petitioner's continued deliberate disregard for his responsibilities in connection with this case." *Cassidy v. Commissioner*, No. 18125–80, slip op. at 18 (T.C. Apr. 3, 1986); R.49 at 18. Accordingly, the tax court denied the taxpayer's motion for extension of time to answer the request for admissions and granted the Commissioner's motion for summary judgment. As noted by the court, Rule 90 of the Tax Court Rules of Practice and Procedure requires a party to respond to requests for admissions within thirty days after service. If a party fails to reply within thirty days, the matters contained in the request are deemed conclusively established.[1]

The court found that the deemed admissions fully supported the deficiencies that had been determined by the Commissioner. Additionally, the tax court found that the admitted facts were sufficient to meet the Commissioner's burden of proof with respect to the fraud penalties. In the tax court's view, the admissions were replete with the requisite indicia of fraud. The matters deemed admitted were: 1) that the taxpayer had purposely circumvented procedures devised by his accountants so that he might omit reporting income, 2) that he claimed non-existent deductions, and 3) that he claimed business deductions for expenses that were expenditures for his personal benefit.

## III

## Analysis

### A. *Dischargeability of the Deficiencies and Penalties*

The taxpayer first argues that his tax liabilities and fraud penalties were discharged in the chapter 7 bankruptcy proceeding. He submits that the deficiencies and fraud penalties were incurred more than three years prior to his filing for bankruptcy and therefore were discharged pursuant to 11 U.S.C. § 523(a)(7)(B). This subsection allows tax penalties "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition" to be discharged. 11 U.S.C. § 523(a)(7)(B).

The taxpayer correctly recognizes that a discharge granted under section 727 of the Bankruptcy Code generally "discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). However, section 523 of the same code contains numerous exceptions to this general rule. Subsection 523(a)(1)(C) excepts tax payments "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Because the taxpayer's deficiencies here resulted from fraud, subsection 523(a)(1)(C) renders them nondischargeable. As the legislative history of this section makes clear, the "date of the taxable year with regard to which the fraud occurred is immaterial." S.Rep. No. 989, 95th Cong., 2d

---

1. Rule 90(c) of the Tax Court Rules of Practice and Procedure provides in relevant part:

> Each matter is deemed admitted unless, within 30 days after service of the request or within such shorter or longer time as the Court may allow, the party to whom the request is directed serves upon the requesting party (i) a written answer specifically admitting or denying the matter involved in whole or in part, or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so, or (ii) an objection, stating in detail the reasons therefor....

Rule 90(e) describes the effect of making an admission:

> Any matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission. Subject to any other orders made in the case by the Court, withdrawal or modification may be permitted when the presentation of the merits of the case will be subserved thereby, and the party who obtained the admission fails to satisfy the Court that the withdrawal or modification will prejudice him in prosecuting his case or defense on the merits....

Sess. 78, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5864. Moreover, subsection 523(a)(7)(A)[2] mandates that fraud penalties are nondischargeable if the underlying tax with respect to which the penalty was imposed is also nondischargeable. S.Rep. No. 989 at 79, U.S.Code Cong. & Admin.News 1976, p. 5864. Because the taxpayer's deficiencies are nondischargeable, his tax penalties are similarly nondischargeable. Thus, we find the taxpayer's contention that his deficiencies and penalties were discharged to be without merit.

B. *Review of the Tax Court's Factual Findings*

The taxpayer also asserts that the tax court erred in finding that he had received the Commissioner's request for admissions on June 12, 1984. We may, however, only overturn the tax court's finding if it is clearly erroneous. As stated by the Supreme Court, " '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *see also Wainwright Bank & Trust Co. v. Railroadmen's Fed. Sav. & Loan Ass'n*, 806 F.2d 146, 150 n. 6 (7th Cir.1986); Fed.R.Civ.P. 52(a).

■ The record in this case amply supports the tax court's finding. As the court noted, the Commissioner's office records showed that fifty pages of documents were sent to the taxpayer in a 9½ by 12¼ inch envelope on June 12, 1984. At the hearing, the taxpayer introduced a 4¼ by 9½ inch envelope that was far too small to have contained the documents that the taxpayer claimed to have received on September 4.

Moreover, the envelope submitted by the taxpayer did not appear to have been stuffed with documents. Further, the set of documents presented by the taxpayer contained only eighteen pages. It was missing two exhibits that were thirty-two pages in length. The court noted that there were several sets of holes in the documents. Ms. Fasse explained the presence of the holes by saying that she had removed staples from the documents in order to photocopy them. The court, however, concluded that one of the holes was made by a large staple of the type that would have been used to secure fifty pages. Under these circumstances, we do not find the tax court's conclusion that the taxpayer received the Commissioner's request for admissions on June 12 to be clearly erroneous. In fact, we can hardly fault the court for concluding that "the more plausible explanation" for the discrepancies in the taxpayer's testimony "is that the [taxpayer] and Fasse fabricated their testimony in an effort to avoid the consequences of [the taxpayer's] continued deliberate disregard for his responsibilities in connection with his case...." *Cassidy v. Commissioner*, No. 18125–80, slip op. at 18 (T.C. Apr. 3, 1986); R. 49 at 18. Furthermore, because the taxpayer's conduct demonstrated a deliberate attempt to delay the presentation of his case, the tax court hardly acted beyond the bounds of its discretion in refusing to permit the taxpayer to withdraw his admissions.

C. *Using the Deemed Admissions to Establish Fraudulent Intent*

■ The taxpayer argues that the admitted facts were insufficient to establish that the deficiencies for the years involved resulted from fraud. However, as the tax court indicated, the admissions of the taxpayer contained numerous indicia of fraud. He admitted, for example, that the

---

**2.** Subsection 523(a)(7)(A) provides:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

relating to a tax of a kind not specified in paragraph (1) of this subsection; ...

amounts claimed as deductions were not expended for the purposes designated on his returns. He also admitted that he used funds claimed as business deductions for his personal benefit and that he withdrew funds from his professional accounts, although he knew that, under his bookkeeping system, the amounts would not be included in his income. He was also aware that he was receiving funds for his legal services but not reporting the full amount on his returns. R.22, app. at 1–2. These facts deemed admitted clearly establish that a substantial part of the underpayment of the tax was in fact due to fraud.[3]

The judgment of the United States Tax Court was in conformity with the applicable sections of the Internal Revenue Code and the Bankruptcy Code. The facts were determined by a fair procedure and amply support the judgment of the court. Accordingly, the judgment of the United States Tax Court is affirmed.

AFFIRMED.

---

**3.** We also reject the taxpayer's argument that the facts deemed admitted may not be used to support a finding of fraudulent intent. Rule 90 of the Tax Court Rules of Practice and Procedure contains no such limitation.